UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| ROSEMARY GARITY, | Case No. 2:11-cv-01805-RFB-CWH |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| USPS PMG MEGAN J. BRENNAN, | Defendant's Motion for Summary Judgment (ECF No. 260) |
| Defendant. | |

**I.      INTRODUCTION**

This case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 260). Plaintiff Rosemary Garity claims that she suffered multiple violations of her constitutional rights while employed at the United States Postal Service. In her Third Amended Complaint (ECF No. 43), Plaintiff alleges that Defendant discriminated against her because of her race and disability. Plaintiff also claims that Defendant retaliated against her for engaging in protected activities. Plaintiff further claims Defendant created a hostile work environment. Finally, Plaintiff claims that the Defendant failed to provide reasonable accommodations for her disabilities.

Defendants filed a Motion for Summary Judgment, which makes several arguments as to why Plaintiff's case should not proceed. For the reasons stated below, the Court grants the Motion in part and denies it in part.

**II.     BACKGROUND**

Plaintiff filed her Complaint in this Court on November 9, 2011. ECF No. 1. Plaintiff filed her most recent, Third Amended Complaint on February 28, 2013. ECF No. 43. Plaintiff alleges the following five causes of action:

i. Plaintiff's Title VII claim in Count I alleges that she was racially discriminated against by her Hispanic supervisor, based on her Caucasian race.

ii. Plaintiff's Title VII claim Count II alleges retaliation against Plaintiff based on her protected activities.

iii. Plaintiff's Title VII Count III alleges Federal Defendant created a hostile work environment

iv. Plaintiff's Rehabilitation Act claim in Count I asserts that the Federal Defendant discriminated against her by failing to accommodate her alleged disabilities.

v. Plaintiff's Rehabilitation Act claim in Count II asserts discrimination on the basis of her disabilities.

Defendant filed a Motion to Dismiss on February 23, 2015. ECF No. 259. The Court denied this Motion on April 16, 2015. ECF No. 279.

Defendant filed a Motion for Summary Judgment on February 23, 2015. ECF No. 259.

### III.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. Undisputed and Disputed Facts

#### A. Undisputed Facts

The Court finds the following facts to be undisputed. The USPS hired Plaintiff, a Caucasian female, on approximately November 3, 2001. Over the course of her first five years as a USPS employee, Plaintiff worked at various locations in Las Vegas, Nevada.

On December 8, 2008, as part of a settlement of a previous discrimination lawsuit against the USPS, Plaintiff transferred stations and began working for the USPS at the Pahrump, Nevada post office. Plaintiff was employed in Pahrump as a Part-Time Flexible Clerk, until approximately December 1, 2011, at which time Plaintiff no longer worked at the USPS.

Mr. Armendariz and Maria Albertini, Plaintiff's former coworker and fellow part-time flexible clerk, are Hispanic. Ms. Albertini was allowed to use her cell phone while working.

Plaintiff was heavily involved in protected activities such as filing EEO complaints and representation of others on the same, filing complaints sent by letter to management, and filing grievances. She was involved in these activities on a continual basis beginning in 2009 up until she no longer worked at the USPS.

In April 2011, Plaintiff was given a thirty (30) day suspension and removal, which was subsequently reduced, through the grievance process.

In early May 2011,[1] the Pahrump Post Office was put on lockdown due to purported threats by the Plaintiff. Plaintiff was not scheduled to work that day.

In October 2011, several of Plaintiff's coworkers signed a letter to USPS management expressing concerns about the Plaintiff and her behavior in the workplace. The letter requested that Plaintiff no longer work at the Pahrump office. The letter further indicated that Plaintiff was potentially dangerous and murderous.

---

[1] Plaintiff claims the date of the lockdown was May 3, 2011 (See Opp'n, ECF No. 282 at 5); Defendant maintains it was May 4, 4011 (See Mot. Summ. J., ECF No. 260 at 5).

**B. Disputed Facts**

The parties dispute a number of facts, including the following:

### 1. *Time Leading up to Plaintiff's Constructive Discharge or Retirement*

After the May 2011 lockdown, Plaintiff was reinstated but was denied work she was entitled to, given reduced hours, subjected to official group discussions and investigative interviews, threatened with firing on multiple occasions, refused requests for rescheduling, interviewed about off duty activities, and sent home against her guaranteed hours.

Plaintiff returned to work on November 14, 2011 and was subjected to an investigation. She became upset and physically sick and left work.

Plaintiff returned to work on December 1, 2011 and was ordered to leave. Plaintiff alleges that she was constructively discharged at this time.

### 2. *Preferential Treatment*

Albertini, Plaintiff's female Hispanic coworker, was given preferential treatment over Plaintiff, who is Caucasian. For example, Albertini was not required to do a less preferred task called "collections," was provided the preferred, earliest start time, and was given preferential assignments over two non-Hispanic senior employees, including Garity. Further, Plaintiff, a senior employee, was given less desirable shifts, in comparison with the junior employees.

### 3. *Conspiracy Against Plaintiff*

Plaintiff maintains that she received information from numerous sources that the management was intent upon firing her, and was frustrated by her filing Equal Employment Opportunity ("EEO") complaints.

### 4. *Disability*

The parties' dispute whether Plaintiff provided the necessary medical documentation of her claimed disabilities, which Plaintiff alleges include: depression, cancer, anxiety, heel spurs, and a heart condition. Defendant argues that it provided accommodation for Plaintiff's heart condition and heel spurs.

**V.    Defendant's Motion for Summary Judgment**

Defendant argues that each of Plaintiff's five causes of action should be dismissed. The Court addresses each cause of action separately.

### A. Title VII, Count I – Race Discrimination

#### *1. No Prima Facie Case*

First, Defendant argues that Plaintiff has not established a prima facie case for race discrimination under Title VII, because the ability to use a cell phone while working cannot be fairly characterized as an adverse employment action.

A plaintiff may establish a *prima facie* of discrimination under Title VII by showing that: (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with qualifications similar to her own were treated more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). An employment action is adverse if it "materially affects the compensation, terms, conditions or privileges of employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

In response, Plaintiff points out that inability to use her cell phone was just one of the ways in which she was discriminated against. For example, Plaintiff argues that she was demoted from her assignment to level 7 bulk mailing; assigned the least preferred duties, particularly "collections;" assigned later and fewer hours; and that Defendants refused re-schedule her. See Opp'n, Ex. 7, Sanford Decl. at 3.

The Court therefore finds that Plaintiff has established a prima facie case of race discrimination by the Defendant. The Court finds that in particular, Plaintiff's demotion establishes that material facts remain as to whether or not she suffered adverse employment action, because these actions materially affected the terms, conditions, and privileges of her employment. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (finding that in the Title VII context, adverse employment action includes "undesirable reassignment.").

#### *2. Non-Discriminatory Reasons Explain Changes to Plaintiff's Hours and Assignments*

Defendant argues that there were various legitimate, nondiscriminatory reasons for

1  changes to Plaintiff's hours and assignments. First, changes to Plaintiff's hours, duties, and end
2  tours, were related to the operational needs of the Pahrump post office. Second, as a part-time
3  flexible clerk, Plaintiff was not guaranteed any certain number of hours or a particular schedule of
4  hours, nor was the fact that she may have been able to perform certain duties determinative of
5  whether she would get those assignments. Finally, other than Plaintiff's own self-serving
6  testimony, there is no evidence that Plaintiff was singled out for denial of the use of her cell phone
7  during work hours.

8  While the Court acknowledges the Defendants' assertion of nondiscriminatory reasons for
9  its adverse action to Plaintiff, this is not the end of the inquiry. Plaintiff may show that the
10 employer's reasons were pretextual. See McDonnell Douglas, 411 U.S. at 802-03.

11 A plaintiff may demonstrate a defendant's reason is pretextual "either directly by
12 persuading the court that a discriminatory reason more likely motivated the employer or indirectly
13 by showing that the employer's proffered explanation is unworthy of credence." Hernandez v.
14 Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (internal quotations and citations
15 omitted). "To make this showing of pretext, [a plaintiff] may rely on the evidence proffered in
16 support of his prima facie case. A factfinder may infer the ultimate fact of retaliation without proof
17 of a discriminatory reason if it rejects a proffered nondiscriminatory reason as unbelievable." Id.

18 Plaintiff has shown that a reasonable juror could find that Defendant's reasons were
19 pretextual, because the Defendant regularly preferred Hispanic employees over Caucasian ones.
20 Specifically, Plaintiff argues that "[r]ace more likely motivated the employer and the proffered
21 explanation is unworthy of credence. If racial discrimination was not the more likely motivation
22 then Albertini would not have been treated preferentially without exception in relation to Sanford,
23 Lindsey and the plaintiff while being similarly situated in each case."

24 Therefore, the Court DENIES Defendant's Motion for Summary Judgment as to the Title
25 VII racial discrimination claim.

26

27 **B. Title VII, Count II – Retaliation**

28 To prevail on her retaliation claim, Plaintiff must demonstrate: (1) that she engaged in a

1  protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal
2  a causal link between the protected activity and the adverse employment action. <u>Dawson v. Entek</u>
3  <u>Intern</u>, 630 F.3d 928, 936 (9th Cir. 2011). But-for causation is required to satisfy the third prong.
4  "This requires proof that the unlawful retaliation would not have occurred in the absence of the
5  alleged wrongful action or actions of the employer." <u>Univ. of Texas Southwestern Med. Ctr. V.</u>
6  <u>Nassar</u>, 133 S.Ct. 2517, 2533 (2013).

7  Protected activities under Title VII include opposing allegedly discriminatory acts by one's
8  employer. <u>Id</u>.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's
9  supervisor. <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee
10 protests the actions of a supervisor such opposition is a protected activity." <u>Trent v. Valley Elec.</u>
11 <u>Ass'n Inc.</u>, 41 F.3d 524, 526 (9th Cir. 1994). Further, if an employee communicates to his employer
12 a reasonable belief the employer has engaged in a form of employment discrimination, that
13 communication constitutes opposition to the activity. <u>Crawford v. Metro. Gov't of Nashville &</u>
14 <u>Davidson Cnty., Tenn.</u>, 555 U.S. 271, 276 (2009).

15 Defendant argues that Plaintiff has not made a prima facie showing of retaliation because
16 she cannot show that but for her protected activities, any of the numerous actions alleged in her
17 retaliation count would have occurred. In support of this argument, Defendant again asserts its
18 allegedly legitimate reasons for its decisions, which resulted in adverse employment action. For
19 example, Defendant argues that Plaintiff was not guaranteed any particular hours, schedule or job
20 assignments because she was a part-time flexible clerk.

21 Plaintiff argues that her hours were never cut prior to her engaging in protected activity,
22 which triggered the adverse employment action just two weeks later. As the Ninth Circuit has
23 explained, "[t]emporal proximity between protected activity and an adverse employment action
24 can by itself constitute sufficient circumstantial evidence of retaliation in some cases." <u>Stegall v.</u>
25 <u>Citadel Broad. Co.</u>, 350 F.3d 1061, 1069 (9th Cir. 2003), <u>as amended</u> (Jan. 6, 2004) (internal
26 citation and quotation omitted).

27 However, Plaintiff does not contest that from 2009 to 2011, she repeatedly engaged in
28 various forms of protected activity and filed numerous complaints with EEO. She also does not

contest that, in some instances, Defendant addressed these complaints by, for example, transferring her to another office. Rather, Plaintiff alleges that there is temporal proximity between her latest EEO complaint, and the adverse employment action. The Court is unpersuaded by this argument and does not find that the temporal proximity between Plaintiff's latest protected action in a series of such actions, and the subsequent adverse employment action, establishes the "but for" causation required to establish a retaliation claim under Title VII.

Finding that Plaintiff has failed to establish "but for" causation, the Court does not address Defendant's last argument, that Plaintiff failed to provide "specific and substantial" circumstantial evidence of pretext with regard to her given hours, her preferred work schedule, or her specific job assignments. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). However, the Court notes that it is unpersuaded by this argument, as Villiarimo itself states that a plaintiff need only show that "either a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotation and citation omitted).

The Court, finding that Plaintiff has failed to allege a prima facie case for a Title VII retaliation claim, GRANTS Defendant's summary judgment as to Plaintiff's retaliation claim.

### C. Title VII Count III – Hostile Work Environment

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004). To demonstrate the third factor, a plaintiff must show that her work environment was both subjectively and objectively hostile. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005).

Defendant argues that Plaintiff's claims do not make clear what characteristic were the basis for the alleged hostile work environment in the final count of her Complaint. The Court disagrees. Plaintiff's Third Amended Complaint clearly states the basis for her hostile work

1  environment claim is "based on retaliation and country of ancestry and sexually harassing
2  environment."

3  However, upon review of the record, the Court does not find that Plaintiff has established
4  that she was subjected to verbal or physical conduct of a racial or sexual nature. While Plaintiff
5  alleges she was harassed in retaliation for her EEO activity and that coworkers wrote and spoke
6  negatively about her, she fails to provide evidence supporting her claim that she was subjected to
7  behavior that is racial and sexual in nature. Rather, Plaintiff simply states that "the environment
8  was sexually charged and included racial discrimination." Opp'n at 23. This is distinct from and
9  insufficient to showing that Plaintiff herself was subject to verbal or physical conduct of a racial
10 or sexual nature, as required to prove a Title VII hostile work environment claim. The single
11 instance of purported sexual conduct alleged in her Opposition brief occurred by way of a
12 coworker who allegedly exposed her belly ring, tattoo "across her butt," thong underwear, and
13 breasts not to Plaintiff, but to her supervisor.[2]

14 Plaintiff argues that this incident demonstrates her employer's acquiescence to
15 inappropriate sexual conduct by third parties, and cites to Freitag v. Ayers to support her argument
16 that such a claim is actionable under Title VII. 468 F.3d 528, 538-540 (9th Cir. 2006). Freitag,
17 however, held that the employer—in that case, the Department of Corrections—could be held
18 liable under Title VII for failure to implement policies to protect its female corrections officers
19 from sexual harassment by male prisoners. Id. Plaintiff does not allege that the employee in
20 question sexually harassed her. Rather, Plaintiff appears to allege that her coworker obtained
21 beneficial treatment on the basis of alleged sexual behavior towards her supervisor.

22 The Court therefore finds that Plaintiff has failed to produce evidence in support of her
23 Title VII Hostile Work Environment claim on the basis of race and sex.

24 Defendant also argues that Plaintiff cannot establish that she endured a hostile work
25 environment because of her protected traits. Because the Court does not find that Plaintiff has met

---

[2] In support of this statement, Plaintiff cites to former coworker Sanford's Declaration, Opp'n, Ex. 7 at para 12. However, Sanford simply states that "[o]ne of the benefits Bennett received for showing her body was unlimited phone use throughout the day." And does not allege the specific details Plaintiff claims in her Opposition brief.

the first requirement of a Title VII hostile work environment claim, the Court does not reach this argument.

The Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

### D. Rehabilitation Act, Count I – Failure to Accommodate

"Section 501 of the [Rehabilitation Act] RHA announces a federal government policy to prevent discrimination against the disabled in employment decisions, and expressly encourages federal government employers to employ individuals with disabilities." Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003). The Ninth Circuit looks to the standards applied under the ADA to determine whether a violation of the Rehabilitation Act ("RHA") occurred in the federal employment context. See Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003). To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a plaintiff must first demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003).

Defendant argues that accommodations were made for two of Plaintiff's disabilities: heel spurs and her heart condition. The Defendant further avers that Plaintiff did not provide the necessary medical documentation to prove she was disabled, and because of that, Defendant argues that no reasonable accommodation could have been made. The Court first addresses the disabilities that were allegedly unsupported by medical documentation, and then the accommodations that were made.

In the Ninth Circuit, employers and employees alike are required to engage in an "interactive process" in making reasonable accommodations for disabled employees. The Court explains: "the interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation. In

circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability, the employer must assist in initiating the interactive process." Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000) vacated sub nom. U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002). "[T]he employee's participation is equally important because he or she generally knows more about his or her capabilities, and holds essential information for the assessment of the type of reasonable accommodation which would be most effective." Goos v. Shell Oil Co., 451 F. App'x 700, 702 (9th Cir. 2011) (internal quotations omitted). As a part of the interactive process, the Court noted that "[e]mployers should meet with the employee who requests an accommodation, *request information about the condition* and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." Id. at 1115 (internal citations omitted) (emphasis added).

The Ninth Circuit has granted summary judgment for employers where employees failed to engage in the interactive process. See, e.g., Dep't of Fair Employment & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 743 (9th Cir. 2011) (where an can cannot prevail on summary judgment on a claim of failure to reasonably accommodate where the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith."); Allen v. Pac. Bell, 348 F.3d 1113, 1115 (9th Cir. 2003) ("Because Allen was requested, but failed, to submit additional medical evidence that would serve to modify his doctor's prior report, Pacific Bell's determination… was appropriate. Pacific Bell did not have a duty under the ADA or California law to engage in further interactive processes…in the absence of any such information.").

In this case, Defendant argues that while Plaintiff provided medical documentation for two disabilities—heel spurs and her heart condition.  Defendant argues that she failed to provide any medical documentation for her other claimed disabilities, which, according to her Third Amended Complaint, include: depression, cancer, and anxiety. Instead, Defendant argues that Plaintiff simply stated that she suffered from these disabilities and requested specific accommodations. Defendant argues that it engaged in the interactive process by asking her to provide medical

documentation of those disabilities, but Plaintiff refused to engage in the process by failing to provide such documentation.

In her declaration, attached to her Opposition, Plaintiff claims that she did provide medical documentation of her disabilities. Opp'n, Ex. 4, Garity Decl at ¶ 13 ("I put in multiple requests asking for accommodation and provided medical documentation of my depression, anxiety, heart condition, sleep disturbance, heel spurs, cancer and muscle spasms on January 6 and 7 and February 1, 2011. The documentation is stamped with U.S.P.S. OHNA (Occupational Health Nurse) stamp on those dates and noted received.") Having reviewed the accommodation requests, the Court finds that the requests were a series of handwritten and typed notes from Plaintiff without any accompanying medical documentation supporting her claimed disabilities. ECF No. 30, Second Am. Compl., Ex. 4, "Accommodation Requests"). USPS employee Debi Blankenship's subsequent denial of Plaintiff's accommodations reflect the lack of medical documentation: "you have advised me…that the premise for requesting this schedule is due to 'medical reasons'…[I]f you were to provide me medical basis or documentated [sic] request supported by your physician to establish your 'medical' reason for having these work hours, I would be more than happy to forward this request to the DRAC as an accommodation request which they may be able to act upon."). Id., Ex. 5.

Additionally, while Plaintiff cites to the deposition of USPS employee James Davey to stand for the proposition that USPS had the requisite medical documentation, Davey's testimony is consistent with the Defendant's position: that while Plaintiff provided medical documentation for her heel spurs and cardiovascular condition, which Defendant in turn accommodated, Plaintiff failed to provide documentation of her other alleged disabilities. ECF No. 260, Ex. D, Davey Depo.

Plaintiff further asserts that the accommodations for her heel spur and cardiovascular issues were ineffective as she states that "[t]he requested accommodation was to stop the harassment/retaliation/abuse to stop the pain from occurring." Opp'n, Ex. 4, Garity Decl. at ¶ 13. The Ninth Circuit has held that "[a]n *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations. Ineffective modifications therefore are not accommodations." U.S. E.E.O.C. v. UPS Supply Chain Sols., 620 F.3d 1103, 1110 (9th Cir. 2010)

(internal quotations omitted). "Reasonable accommodations may include: 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations.'" Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999) (citing 42 U.S.C. § 12111(9)(B)). Notably, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." U.S. E.E.O.C. v. UPS Supply Chain Sols., 620 F.3d 1103, 1110-11 (9th Cir. 2010) (internal citation omitted).

In this case, Plaintiff's request for USPS to "stop the harassment/retaliation/abuse" does not constitute a reasonable accommodation under the ADA and, by extension, the RHA. In reviewing Plaintiff's requests for accommodation, the Court notes that Plaintiff also requested to be given an "early start," which the Court understands to mean earlier shifts. However, this request was in connection with Plaintiff's mental disability, rather than for her heel spurs or heart condition, for which she had not presented medical documentation.

The Court finds that the record indicates that Plaintiff failed to engage in the requisite interactive process by failing to provide medical documentation of her disabilities, and that Plaintiff failed to demonstrate how the accommodations made for her documented disabilities were ineffective.

The Court therefore GRANTS summary judgment in favor of the Defendant on Plaintiff's Failure to Accommodate claim.

### E. Rehabilitation Act, Count II– Disability Discrimination

Defendant argues that Plaintiff cannot show that she was disabled or qualified with or without reasonable accommodations because she did not participate in the interactive process that would allow the USPS to determine the extent of her purported disabilities. While this argument is compelling in the context of a failure to accommodate claim, the Court does not find that it applies with regard to Plaintiff's discrimination claim.

1   In her discrimination claim, Plaintiff argues that she was disparately treated based upon her disabilities—namely, her psychological disabilities. Third Amended Complaint, ECF No. 43 at 5. Such a claim does not require the interactive process, which is used where employers and employees work together to reach a reasonable accommodation for an employee's disability. Indeed, a plaintiff could demonstrate that she is disabled under the ADA by demonstrating that she was "regarded as" disabled by her employer, which would not necessarily require the interactive process.

Defendant then argues that Plaintiff cannot show discrimination where there were no similarly situated employees to Plaintiff. In defining "similarly situated," Defendant argues that the office had not previously had a part-time flexible clerk with the disabilities that Plaintiff alleges.

However, Plaintiff need not show that other *disabled* part-time clerks were treated differently. Rather, the requirement is that "employees with *qualifications* similar to her own were treated more favorably." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998), as amended (Aug. 11, 1998) (emphasis added); See also Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003), as amended (Jan. 2, 2004) ("A showing that the County treated similarly situated employees outside Vasquez's protected class more favorably would be probative of pretext…[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."); U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 417, 122 S. Ct. 1516, 1531, 152 L. Ed. 2d 589 (2002) "(iii) [m]odifications or adjustments *that enable* a covered entity's employee with a disability *to enjoy equal benefits and privileges* of employment as are enjoyed by its other similarly situated employees without disabilities." 29 CFR § 1630.2(o) (2001) (emphasis added). In this case, Plaintiff alleges that her fellow part-time clerks were given significantly more hours than she. Defendant does not dispute this, but rather argues that the nature of Plaintiff's job as a part-time flexible clerk does not guarantee Plaintiff a certain number of hours of work.

The Court therefore DENIES Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim.

## VI. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 260) is granted in part and denied in part:

- **Title VII, Count I – Race Discrimination.** The Court DENIES Defendant's Motion as to Plaintiff's discrimination claim.
- **Title VII, Count II – Retaliation.** The Court GRANTS Defendant's Motion as to Plaintiff's retaliation claim.
- **Title VII Count III – Hostile Work Environment.** The Court GRANTS Defendant's Motion as to Plaintiff's hostile work environment claim.
- **Rehabilitation Act, Count I– Failure to Accommodate.** The Court GRANTS Defendant's Motion as to Plaintiff's failure to accommodate claim.
- **Rehabilitation Act, Count II– Disability Discrimination.** The Court DENIES Defendant's Motion as to Plaintiff's discrimination claim.

DATED September 13, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**